# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                              **Case Nos.:  3:09cr118/MCR/CJK**
                                          **3:10cv529MCR/CJK**

**GABRIEL MONARY FOREHAND**
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supplement thereto (docs. 34, 49). The Government has filed a response (doc. 52) and Defendant has filed a reply (doc. 57). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged in a two count indictment with being a felon in possession of a firearm and possessing a firearm with an obliterated serial number (doc. 1). He pleaded guilty after signing a Statement of Facts and a Plea and Cooperation Agreement on January 13, 2010 (docs. 17–19).

The Statement summarized the facts leading to the discovery, by a Florida Department of Probation and Parole (FDPP) officer, of a photograph on a cellular telephone depicting Defendant holding an AR-15 type assault rifle and how Defendant was identified as the subject of this photo (doc. 19 at 1–2). The Statement then continued:

> As a result of this discovery, on or about September 25, 2009, Mr. Forehand's Probation Officer requested assistance from the Escambia County Sheriff's Office and asked that they be present while he conducted a probation search of Mr. Forehand's residence which is located in Pensacola, Florida. Thereafter, contact was made with Mr. Forehand at his apartment and the purpose for the FDPP Officer's presence was explained. Condition number eight of Mr. Forehand's community control probation in Okaloosa County Circuit Court case numbers 07-CF-776 and 07-CF-787 provides, "You will promptly and truthfully answer all inquiries directed to you by the Court or the Community Control Officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he may give you." Following the initial encounter and explanation with Mr. Forehand, he was removed from the apartment and probation officers and ESCO deputies began to search the residence. As a result of the observation of multiple items that appeared to be possible stolen property and shortly after beginning the search, Mr. Forehand was brought back into the residence. At that time, Mr. Forehand was asked for permission to search the residence. Mr. Forehand agreed and signed a consent to search form presented to him. **Thereafter, a loaded Lorain brand semi-automatic pistol [sic] on the floor under Mr.**

> **Forehand's bed.** The entire firearm is black with the exception of the location where the serial number should be which is gray as a result of the serial number being obliterated and removed. The fact that the serial number is obliterated and removed is immediately noticeable upon handling the firearm because it is on [sic] grip of the firearm. The Lorain firearm was manufactured in California and the Federal band .22 LR caliber ammunition loaded in the firearm was manufactured in Minnesota. Therefore, both the firearm and ammunition had traveled in interstate commerce prior to their recovery at the defendant's residence.

(Doc. 19 at 2–3 (emphasis added)). The Statement then listed four felony convictions and was signed by Defendant and his attorney. The bolded sentence above is underlined, and a handwritten notation alongside indicates "The defendant disagrees. His recollection is that the firearm was found before he signed the consent form" (*id.* at 3). Defendant, his attorney and the AUSA placed their initials below the statement.

During the plea colloquy, Defendant confirmed that he had discussed his rights with counsel (doc. 46 at 17). The court informed him of the rights he would be waiving, including that he would be giving up any defense that he might have to the charges, and by way of example mentioned that Defendant would be giving up his right to present a motion to suppress (*id.* at 17–18). The court reassured Defendant that he had the right to change his mind up and until it asked Defendant what his plea was, and that if he decided to maintain his not guilty plea, that was fine (*id.* at 18). The court asked if Defendant had any questions, and after Defendant responded in the negative, counsel asked if he could address his client (*id.* at 18–19). The following exchange took place between Mr. Kypreos and Defendant:

> MR. KYPREOS: Mr. Forehand, do you recall our discussing the issue of motion to suppress, my advice to you on that?
>
> THE DEFENDANT: Yes.

MR. KYPREOS:  And do you recall we discussed the manner in which the gun was found?

THE DEFENDANT:  Right.

MR. KYPREOS:  Okay.  And I've explained to you that there's certain law that applies with this probation officer, and they had reasonable grounds to believe that you had a firearm, the probation officer could go and look for the firearm in your apartment; is that correct?

THE DEFENDANT:  Right.

MR. KYPREOS: Now, just before we got started today, you signed a statement of facts that the prosecutor showed you, right?

THE DEFENDANT:  Right.

MR. KYPREOS: In the statement of facts, it indicates that a consent to search was obtained from you before they searched the premises; is that correct, or remember that document you signed?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: And you disagree with that.  Your contention is that the gun was found first and then they gave you the consent form; is that correct?

THE DEFENDANT: Yes sir.

MR. KYPREOS: And do you recall that I basically advised you, even if that's the sequence, it would appear that they would have a legal basis for the seizures of the firearm in your case at your apartment, is that correct?

THE DEFENDANT:  Right.

THE COURT [sic]: So, what the judge is asking you is, if you have any reservations about that and for whatever reason you still want to pursue that issue, then you don't go forward with your guilty plea with that. Do you understand that?

THE DEFENDANT: Right.

MR. KYPREOS: Now, if you do wish to waive that issue, do you understand you can't revisit it later on?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: And what the judge is trying to make clear to you, if you plead guilty, the next thing that's going to happen is going to be your sentencing, not a motion to suppress here. Do you understand that?

THE COURT: We won't discuss a motion to suppress at your sentencing.

MR. KYPREOS: Do you understand that?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: So the question is, do you understand by pleading guilty, one you're not going to have the jury trial that we discussed, right?

THE DEFENDANT: Right.

MR. KYPREOS: And there won't be a motion to suppress filed. Do you understand that?

THE DEFENDANT: Right.

MR. KYPREOS: Is that what you want to do?

(Doc. 47 at 20–21). At this point the court offered Defendant a few minutes to speak to counsel in private, and counsel for the Government stepped outside the court room as well (*id*. at 2). After a brief recess, counsel indicated that Defendant understood the rights he was giving up and was ready to proceed. The court again asked if Defendant was clear about the motion to suppress and the fact that he would be waiving any ability to present that issue to the court and he indicated that he was (*id*.).

Defendant also swore to the court that no one had promised him anything in relation to his sentence in this case (doc. 47 at 27). There was a lengthy discussion about the issue of cooperation (*id*. at 27–30). Defendant told the court that he had heard that "some people don't receive that 5K motion until after they have been sentenced and they have to come back before the Court for that," and asked whether that was true (*id*. at 29). The court explained that his presence in court would not be required in that instance (*id*.).

Defendant averred that he had not been threatened or pressured to sign the statement of facts and that he had done so of his own free will (doc. 47 at 30–31). With respect to the issue of Defendant's consent to the search, counsel again clarified that Defendant disagreed only with the single statement on the third page of the statement of facts. The following exchange took place:

> MR. KYPREOS: And your recollection is that the firearm itself was found before they gave you a formal consent document to sign; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> MR. KYPREOS: So where this document says otherwise, you would disagree with that?

THE DEFENDANT: Yes, sir, I would.

MR. KYPREOS: And you and I listened to an audiotape interview of you regarding this that was done by law enforcement at the time; is that correct?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: And I explained to you an issue you might be able to raise as to the voluntariness of the consent that you gave; is that correct?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: But I also explained to you based on my research at that point, even if the sequence was the way you described it, the gun found first and then consent form, it would appear that the firearm would be admissible at the trial; is that correct?

THE DEFENDANT: Yes, sir.

MR. KYPREOS: But as far as disagreement, that's your disagreement. You don't deny you signed the consent form?

THE DEFENDANT: No, sir.

MR. KYPREOS: Is that correct?

THE DEFENDANT: Yes, sir.

(Doc. 47 at 34–35).  The court then told Defendant:

It's not for me or the Court to tell you today that what Mr. Kypreos is advising you is the finding that the Court would make.  I mean, essentially, I am not making a finding here.  I haven't heard the evidence, so I want to make sure you understand that, that I am not giving you any advice, and I am not necessarily agreeing with what Mr. Kypreos is telling you about his view of the law and the facts in the case.

(Doc. 47 at 35). Defendant acknowledged that he understood. The court asked the parties to make the change noting Defendant's disagreement on the actual statement of facts itself (*id*. at 36), which they did, as set forth above. Defendant told the court that he was satisfied with Mr. Kypreos' representation of him (*id*. at 38). The court then told Defendant it would be asking him what his plea was, and again reminded him that up until the point that he told the court he was pleading guilty, he was free to change his mind, but that after he entered the plea it would be very unlikely that the court would allow him to withdraw his plea (*id*.). The Defendant indicated that he understood, and then pleaded guilty to Counts One and Two of the indictment (*id*. at 39–40).

The Presentence Investigation Report ("PSR") was disclosed to the defense on March 2, 2010 (doc. 21). In the final version of the PSR, Defendant had a total offense level of 25 and a criminal history category of V, which corresponded to a guidelines term of 100–125 months imprisonment (doc. 32 at ¶ 76). After the court sustained objections at sentencing, the final offense level was 21 with an applicable guideline range of 70 to 87 months (doc. 46 at 14–18). The court stated that although it would arrive at an above guidelines sentence based on Defendant's prior conduct, in light of his psychological diagnoses and his attempts at cooperation, it chose to sentence him to a term of 84 months imprisonment (*id*. at 31). Defendant's total sentence was 84 months imprisonment on Count One and 60 months imprisonment on Count Two, to run concurrently with one another, and a $500 fine (*id*. at 34–35; docs. 29–30). He did not appeal.

In his original motion to vacate Defendant claimed a violation of his right to be free from illegal search and seizure (doc. 34). Before the Government had the

opportunity to respond, Defendant filed a motion to supplement, which was granted (*see* docs. 48–50).[1]   The supplement was filed pursuant to the prison mailbox rule[2] on February 14, 2011 (doc. 49 at 6), and includes two additional claims relating to the search and seizure and eleven claims of ineffective assistance of counsel. The Government opposes the motion.

## LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

---

[1]In granting the motion to supplement, the court did not address the issue of the timeliness of Defendant's supplemental claims.

[2]A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  *See* Houston v. Lack, 487 U.S. 266 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule").

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two part test also applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. Id. at 59. In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).

Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. *See* <u>Boyd v. Comm'r, Ala. Dep't of Corr.</u>, 697 F.3d 1320, 1333–34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 F. App'x 804, 807 (11th Cir. 2012) (citing <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

Claims Relating to the Search Warrant

Grounds One, Two, Three, Four, Seven, Eight, Nine and Fourteen all relate to Defendant's belief that the search of his residence which led to the charges in this case was unlawful. Defendant waived his right to challenge the search by entering a guilty plea without filing a motion to suppress. Furthermore, the transcript of the plea colloquy, set forth in relevant part above, refutes his claims that counsel was constitutionally ineffective due to his failure to investigate this issue or his alleged

unwillingness or refusal to file a motion to suppress. Defendant is thus not entitled to relief on any of these claims.

<u>Remaining Claims of Ineffective Assistance of Counsel</u>

In Grounds Five and Six, Defendant alleges that counsel put "pressure" on Defendant to plead guilty. This claim is also refuted by the transcript of the plea colloquy, which reflects that Defendant denied being threatened or pressured to sign the statement of facts (doc. 47 at 30). The plea colloquy further supports a finding that Defendant wanted to plead guilty in light of his interest in cooperating with the Government (*id*. at 27–30; doc. 46 at19–20, 22–23, 26 (reflecting Defendant had been cooperating with the Government before sentencing, although not yet to the level where the Government would recommend a 5K1)).[3] The undersigned notes that the district court was extraordinarily thorough in its colloquy, and Defendant had ample opportunity to change his mind about entering a guilty plea or raise any concerns he may have had with the court, but he did not do so.

Grounds Ten, Eleven and Twelve relate to counsel's alleged failure to disclose discovery materials to Defendant. Defendant asserts that he and his family members made multiple requests to counsel for unidentified discovery in his case, and that it took months to receive the materials that were requested. Even assuming the truth of Defendant's statements, he has not shown how he was prejudiced by any such delay. Thus, he has failed to show he is entitled to relief under <u>Strickland</u>.

---

[3]The Government suggests that Defendant may be interested in challenging counsel's performance at this time due not to a sincere belief that counsel's performance was constitutionally ineffective, but rather because "Defendant lost his chance to cooperate and provide assistance to the Government when he was erroneously released from incarceration, failed to inform jail personnel of their error and failed to contact the court, counsel, or anyone connected with the court system while he erroneously remained at large for one month" (doc. 52 at 14, *citing* doc. 35).

Grounds Twelve and Thirteen, which contain allegations of general unprofessionalism by counsel, are also refuted by the plea colloquy. Defendant was given the opportunity to voice any complaints he had with counsel's performance during the plea colloquy, but he failed to do so, instead indicating, when directly questioned by the court, that he was satisfied with counsel's performance (doc. 47 at 38). This response is conclusive. Accordingly, the nature of Defendant's complaints, counsel's alleged comments about the content of videos on Defendant's cell phone and the general critique of counsel's demeanor and responses to Defendant and Defendant's family, would not support a finding that counsel was constitutionally ineffective.

For all of the foregoing reasons, Defendant has not shown he is entitled to relief and his § 2255 motion should be denied.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 34) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 7th day of October, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**